936 F.2d 819
 EMPIRE UNITED STEVEDORES and Signal Administration, Inc., Petitioners,
v.
Reginald GATLIN and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 90-4858
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 July 30, 1991.
 W. Robins Brice, Royston, Rayzor, Vickery & Williams, Houston, Tex., for petitioners.
 
 
 1
 James H. Bjorum, Cox & Bjorum, Corpus Christi, Tex., for Gatlin.
 
 
 2
 Michael S. Hertzig, Carol A. DeDeo, Assoc. Solicitors, U.S. Dept. of Labor, Washington, D.C., for director.
 
 
 3
 Linda Meekins, Clerk, BRB, U.S. Dept. of Labor, Washington, D.C., for other interested parties.
 
 
 4
 Petition for Review of an Order of the Benefits Review Board.
 
 
 5
 Before JOHNSON, SMITH and WIENER, Circuit Judges.
 
 PER CURIAM:
 
 6
 Petitioners, Empire United Stevedores and Signal Administration, Inc., (collectively Empire) appeal the order of the Benefits Review Board affirming the Administrative Law Judge's award of compensation under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Sec. 901, et seq., to Reginald Gatlin on the grounds that the ALJ erred in computing Gatlin's average weekly wage and loss of wage earning capacity. Finding that the BRB's decision was supported by substantial evidence and was in accordance with the law, we affirm.
 
 BACKGROUND
 
 7
 Gatlin was working as a longshoreman on April 23, 1986, his second day on the job with Empire, when he injured his knee in the course of his employment. He underwent arthroscopic surgeries on his knee but was unable to return to longshore employment. Gatlin sought temporary total disability benefits for the time he was unable to work and permanent partial disability benefits thereafter. The ALJ found that Gatlin was entitled to temporary total disability compensation benefits from April 23, 1986 through September 3, 1987, and permanent partial disability benefits for 50% loss to the knee thereafter.
 
 
 8
 Prior to his employment with Empire, from 1982 through 1984, Gatlin was employed as a sales representative/store manager at ColorTile, Inc. He earned $14,797.65 in 1984. He worked intermittently during the period from the end of 1984 through the time of the accident at various jobs for different employers. During the 52 weeks prior to his injury, Gatlin earned only $3,202.54. Using this employment history, the ALJ found that Gatlin's wages during the 52 weeks preceding his injury were not representative of his actual wage-earning capacity, and that Section 10(a) and (b) of the LHWCA could not be used to determine Gatlin's average weekly wage. The ALJ therefore resorted to Section 10(c) to determine that Gatlin's average weekly wage was $284.57.
 
 
 9
 Empire appealed to the BRB claiming, inter alia, that the ALJ erred in failing to consider Gatlin's wages for the 52 week period preceding the injury in determining his average weekly wage. The BRB held that the ALJ's conclusion that Gatlin's average weekly wage in 1984 more accurately represented his earning capacity than his 1985 earnings from sporadic employment was rational and supported by substantial evidence. The BRB then affirmed the award. Empire appeals to this court pursuant to section 21(c) of the LHWCA, 33 U.S.C. Sec. 921(c).
 
 The Statutory Scheme
 
 10
 Under the LHWCA, compensation awards run from the date the work-related injury for which a claim is made renders the claimant disabled. 33 U.S.C. Secs. 902(2), 908(a)-(e). The rate of compensation payable for such injury is based on "66 2/3% of the difference between the average weekly wages of the employee and the employee's wage earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability." 33 U.S.C. Sec. 908(c)(21). The determination of the average weekly wage is governed by section 10 of the Act, which provides three alternative methods for calculating the employee's average annual earning capacity, 33 U.S.C. Sec. 910(a)-(c), the amount of which is then divided by 52 weeks to arrive at the average weekly wage, 33 U.S.C. Sec. 910(d)(1).
 
 
 11
 Section 10(a) provides that when the employee has worked in the same employment for substantially the whole of the year immediately preceding the injury, his annual earnings are computed using his actual daily wage. 33 U.S.C. Sec. 910(a). Section 10(b) provides that if the employee has not worked substantially the whole of the preceding year, his average annual earnings are based on the average daily wage of an employee in the same class who has worked substantially the whole of the year. 33 U.S.C. Sec. 910(b). But, if neither of these two methods "can[ ] reasonably and fairly be applied" to determine an employee's average annual earnings, then resort to section 10(c) is appropriate. 33 U.S.C. Sec. 910(c); Walker v. Washington Metro. Area Transit Authority, 793 F.2d 319, 321 (D.C.Cir.1986).
 
 
 12
 Under section 10(c) an employee's average annual earnings shall be:
 
 
 13
 [S]uch sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of the other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee.
 
 
 14
 33 U.S.C. Sec. 910(c). Accordingly, application of section 10(c) is appropriate when the employee's work is inherently discontinuous or intermittent, Palacios v. Campbell Industries, 633 F.2d 840, 841-842 (9th Cir.1980), and when " 'otherwise harsh results' would follow were an employee's wages invariably calculated simply by looking at the previous year's earnings," Walker, 793 F.2d at 322.
 
 DISCUSSION
 
 15
 We review a decision of the Benefit Review Board under the same standard as it reviews the decision of the ALJ: Whether the decision is supported by substantial evidence and is in accordance with the law. Odom Constr. Co. v. United States Dept. of Labor, 622 F.2d 110, 115 (5th Cir.1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981). This court may not substitute its judgment for that of the ALJ, see O'Keeffe v. Smith, Hinchman & Grylls Assoc., Inc., 380 U.S. 359, 363, 85 S.Ct. 1012, 1015, 13 L.Ed.2d 895 (1965), nor may we reweigh or reappraise the evidence, but may only inquire into the existence of evidence to support the ALJ's factual findings, see, e.g., Penrod Drilling Co. v. Johnson, 905 F.2d 84, 87-88 (5th Cir.1990); South Chicago Coal & Dock Co. v. Bassett, 104 F.2d 522 (7th Cir.1939), aff'd, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), overruled on other grounds by McDermott Int'l Inc. v. Wilander, --- U.S. ----, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). All doubts are to be construed in favor of the employee in accordance with the remedial purposes of the LHWCA. Odom, 622 F.2d at 115.
 
 
 16
 Empire concedes that section 10(c) governs the calculation of Gatlin's average weekly wage in this case. Therefore, the sole issue before this court is whether the BRB properly upheld the ALJ's finding that, under section 10(c), Gatlin's wage earning capacity should be based on his pre-injury wages as a salesman because his intermittent longshoring work in the 52 weeks prior to his injury did not reasonably and fairly represent Gatlin's true wage-earning capacity.
 
 
 17
 Empire claims that, as an intermittent longshore worker who had been unable to find regular employment for over a year prior to his accident, Gatlin is not entitled to have his average weekly wage established as though he had been a regular everyday worker. Empire argues that under the language of section 10 and its legislative history, the relevant period to be considered should be the 52 week period immediately preceding the injury. According to Empire, sections 910(a) and (b) direct the ALJ to look to the employees work patterns at the time of the injury, see, 33 U.S.C. Sec. 910 (preamble), (a) & (b), therefore limiting the scope of the entire section, including section 10(c), to the time immediately preceding the injury. Furthermore, the legislative history of section 10(c) specifically states that "the measurement of an employee's earning capacity should not be limited to his earnings in the particular employment in which he was engaged while injured, but should be gauged by what the employee is capable of earning in all employments in which he was employed during the year prior to injury ...", S.Rep. No. 1315, 80th Cong., 2d Sess. 6, reprinted in 1948 U.S.Code Cong. & Admin.News 1979, 1983 (emphasis added). Thus, Empire contends, because the ALJ completely disregarded Gatlin's earnings for the sixteen months prior to his injury, it ignored the statutory mandate that earning capacity be demonstrated as of the time of the injury and from the 52 week period immediately prior to the injury.
 
 
 18
 The flaw in Empire's limited interpretation of section 10 is that it ignores the plain language of section 10(c) and the purpose for which it was drafted. First, section 10(c) contains no limiting time provisions as do sections 10(a) and (b). Therefore, the time frame to consider the 10(c) factors is not limited to the 52 weeks immediately preceding to the injury, but includes all of the employee's relevant work experience. See, e.g., Tri-State Terminals, Inc. v. Jesse, 596 F.2d 752, 755 (7th Cir.1979); Anderson v. Todd Shipyards, 13 B.R.B.S. 593, 596, BRB No. 79-759 (1981). Second, the prime objective of section 10(c) is to "arrive at a sum that reasonably represents a claimant's annual earning capacity at the time of the injury." Cummins v. Todd Shipyards, 12 B.R.B.S. 283, 285, BRB No. 79-167 (1980). Thus, the ALJ must make a fair and accurate assessment of the injured employee's earning capacity --the amount that the employee would have the potential and opportunity of earning absent the injury. Tri-State, 596 F.2d at 757.
 
 
 19
 Third, unlike sections 10(a) and (b), section 10(c) does not condition the average weekly wage determination on the actual earnings of the employee or of other employees in the same class, but merely requires that the ALJ give regard to the employee's actual prior wages in the employment in which he was working at the time of injury. Thus, the amount actually earned by the employee at the time of the injury is a factor, but not the overriding concern under section 10(c). Id. at 755.
 
 
 20
 Under this approach, when the ALJ "calculates average annual earnings under section 10(c) by considering the [employee's] earning history over a period of years prior to injury, he must take into account the earnings of all the years within that period." Anderson, 13 B.R.B.S. at 596 (emphasis added). In this case, the ALJ clearly "took into account" all of Gatlin's earnings over several years and did not disregard any one year. That he did not calculate Gatlin's earning capacity based solely on the 52 weeks prior to the injury is in accordance with the language of section 10(c) and within the broad discretion of the ALJ. See Cummins, 12 B.R.B.S. at 285. We therefore agree with the BRB that the ALJ's determination that Gatlin's earnings during 1984 more accurately reflected his actual earning capacity than did his earnings from sporadic employment in 1986, is reasonable, is supported by substantial evidence, and is approbated by applicable law.
 
 
 21
 AFFIRMED.