UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-60686
Summary Calendar
_____


NEW THOUGHTS FINISHING COMPANY;
TRAVELERS INSURANCE COMPANY,

                                        Petitioners,

                    versus

DONALD CHILTON;
DIRECTOR, OFFICE OF WORKER'S
COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR,

                                        Respondents.

_____

Appeal from the United States Department of Labor
Benefits Review Board
(94-2386)
_____

June 17, 1997

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

        Petitioners, New Thoughts Finishing Company ("New Thoughts")

and Travelers Insurance Company ("Travelers"), appeal the final

order of the Benefits Review Board affirming the Administrative Law

Judge's award of compensation to respondent Donald Chilton under

_____

[*]        Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

the Longshore and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. § 901, *et seq*. The ALJ's award was affirmed as a matter of law when the Board did not act on the appeal within a year. *See* Omnibus Appropriations for Fiscal Year 1996, Pub. L. No. 104-134, § 101(d), 110 Stat. 1321-219 (enacted 1996). New Thoughts and Travelers filed a notice of appeal to this court pursuant to 33 U.S.C. § 921(c).

I.

On March 10, 1992, Chilton injured his lower back when the crane he was operating "toppled over." The only dispute between the parties below and in this court is the computation of Chilton's average weekly wage.

The average weekly wage is determined by dividing the claimant's average annual earnings by 52. 33 U.S.C. § 910(d)(1). The parties and the ALJ agree that the computation of Chilton's average annual earnings is governed by Section 10(c) of the Act, 33 U.S.C. § 910(c), which provides that:

> . . . average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee.

33 U.S.C. § 910(c). Section 910(c) applies when the claimant's work is seasonal or intermittent. *Empire Union Stevedores v.*

2

*Gatlin*, 936 F.2d 819, 822 (5th Cir. 1991); *Gilliam v. Addison Crane Co.*, 21 BRBS 91 (1987)(citing *Lozupone v. Stephano Luzopone & Sons*, 12 BRBS 148, 156-57 (1979)).

The ALJ found that Chilton's average weekly wage was $467.67, which yields a weekly benefit of $311.78. The ALJ based Chilton's average weekly wage on an annual earning capacity of $24,319. Petitioners point out that although Chilton earned $24,319 in 1988, his earnings were considerably less in the three years immediately preceding the accident. He earned $17,960 in 1991, $14,621 in 1990, and $13,735 in 1989. Chilton's testimony reflected that his work in construction industry for the previous three years had been intermittent because work was not available. He testified that he worked whenever work was available, but in recent years had been laid off frequently, even during the course of finishing a project.

The ALJ evidently chose the 1988 figure because he concluded that Chilton's earnings in the more recent years reflected a depression in the industry and that Chilton had "shown that work in the industry was again available for him after the accident." Petitioners contend that the record contains no evidence to support these conclusions.

## II.

We review a decision of the Benefits Review Board using the same standard the Board applies to review a decision of the ALJ: whether the decision is supported by substantial evidence and is in

3

accordance with law.  *SGS Control Servs. v. Director, Office of Worker's Compensation Programs, U.S. Dep't of Labor*, 86 F.3d 438, 440 (5th Cir. 1996)(citing *Gatlin*, 936 F.2d at 822).  "Substantial evidence is evidence that provides 'a  substantial basis of fact from which the fact in issue can be reasonably  inferred . . . more than a scintilla . . . more than create a suspicion . . . such relevant evidence as a reasonable mind might accept as adequate to support a  conclusion.'"  *Avondale Indus., Inc. v. Director, Office of Workers' Compensation Programs*, 977 F.2d 186, 189 (5th Cir. 1992) (quoting *Diamond M. Drilling Co. v. Marshall*, 577 F.2d 1003, 1006 (5th Cir. 1978) (quoting *NLRB v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 299-300, 59 S. Ct. 501, 504-05, 83 L.Ed. 660 (1939))).  The substantial evidence standard is less demanding than that of preponderance of the evidence, and the ALJ's decision need not constitute the sole inference that can be drawn from the facts.  *Id.*

Moreover, we may not substitute our judgment for that of the ALJ, nor reweigh or reappraise the evidence, but may only determine whether evidence exists to support the ALJ's findings.  *SGS Control Servs.*, 86 F.3d at 440 (citations omitted).  All doubts are to be construed in favor of the employee in accordance with the remedial purposes of the Act.  *Gatlin*, 936 F.2d at 822 (citation omitted).

III.

4

After careful review of the record, we agree with petitioners that the record contains no evidence to support the ALJ's finding that $467.67 represented a reasonable average weekly wage. Contrary to the ALJ's decision, the record is devoid of evidence that Chilton at the time of his injury, unlike in the immediately preceding three years, would have had the opportunity to be employed year-round. Although Chilton testified that he was employed in building a wharf at the time of his injury, there is no indication that the existence of this project would have produced steady employment for Chilton.[1] Indeed, in 1991 he worked on a single project that continued for the entire year, the construction of an interstate highway bypass, but was laid off numerous times in the course of that year. Similarly, his testimony that in 1994 "all his friends are working" does not support the inference that work was available to him year-round in 1992.[2] In short, no

_____

[1] Chilton said that he expected to work at the New Thoughts job seven days a week because a "business agent" told him that it would be a "time job" (meaning that "there was going to be a lot of time on the job"). This, however, says nothing about the duration of this or similar jobs.

[2] The parties' joint exhibits included a transcript of Chilton's deposition, which was taken less than a month before the hearing. It is not clear whether the ALJ considered this deposition in reaching his conclusion: the ALJ indicated at the hearing that he would not consider the deposition, but his Decision and Order cites the deposition (Joint Exhibit 30) as part of the record. The record does not contain substantial evidence to support the ALJ's findings without Chilton's deposition testimony. Even the scintilla of evidence that the record does contain without his deposition testimony is undermined if that testimony is considered. Contrary to his hearing testimony that "all his friends were working," he testified in his deposition that some of his friends

substantial evidence supports the ALJ's conclusion that Chilton's annual earnings for 1988, when he was employed the entire year, reflect his average annual earnings at the time of his injury in 1992.

Unlike Sections 910(a) and 910(b) of the Act, Section 910(c) allows the ALJ to consider more than just the year immediately preceding the injury. *Compare* 33 U.S.C. § 910(a), (b) *with id.* § 910(c). Nevertheless, the ALJ's task is to determine the "average weekly wage of the injured employee *at the time of the injury . . . .*" *Id.* § 910 (emphasis added). If the ALJ looks beyond the 52 weeks immediately preceding the injury, "he must take into account the earnings of all the years within that period." *Gatlin*, 936 F.2d at 823 (quoting *Anderson v. Todd Shipyards*, 13 BRBS 593, 596 (1981)) (emphasis omitted).

In this case, there is no evidence that would allow the ALJ to skip over the claimant's earning history for the three years immediately preceding the accident and select his last full year of employment as his average annual earnings.[3] There is not more than

were working, some were not, and that he "would have to be guessing" regarding the availability of work. He also testified in his deposition that work opportunities in the area were "just steady getting worse" after 1991.

[3] As the Seventh Circuit explained in *Tri-State Terminals v. Jesse*, "one of the primary reasons for the differentiaton in § 10(c) is that it would be unfair to the employer to calculate an intermittent employee's wage under §§ 10(a) or (b), since to do so would treat the claimant as a full-time worker and thereby exaggerate his loss." 596 F.2d at 756 n.3.

a scintilla of evidence in the record that there was a change in circumstances that made the claimant's average annual earnings at the time of injury greater than his actual earnings in the immediately preceding years, *see, e.g.*, *Tri-State Terminals, Inc. v. Jesse*, 596 F.2d 752, 754 (7th Cir. 1979), or that claimant had recently changed his field of work. *See, e.g.*, *Gatlin*, 936 F.2d at 821.

For these reasons, we REVERSE and REMAND to the ALJ for a redetermination of Chilton's average weekly wage.