IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-60991
Summary Calendar

BAY, LTD; ZURICH NORTH AMERICA INSURANCE CO

Petitioners

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, US
DEPARTMENT OF LABOR; JOHN STILES

Respondents

Appeal from the United States Benefits Review Board
No. 07-0176

Before DAVIS, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

John Stiles ("Stiles") was injured while working as a scaffolding supervisor for Plaintiff-Appellant Bay, Ltd. Stiles made a claim for benefits pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-948. The Administrative Law Judge ("ALJ") awarded benefits to Stiles based on an average weekly wage of $1,329.63, and the Benefits Review Board ("BRB") affirmed the ALJ's decision. We must decide whether the BRB's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

decision was supported by substantial evidence on the record as a whole and is in accordance with the law.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Stiles was hired as a scaffolding supervisor and, after working approximately two weeks for Bay, Ltd., suffered a work-related injury on May 22, 2003.  During this time, Stiles earned a total of $1,636, at a rate of $18 per hour.  Stiles made a claim for benefits for his work-related injury pursuant to the LHWCA.  A formal hearing was held before an ALJ,  and the sole issue before the ALJ was Stiles' average weekly wage.  Stiles testified that during the years preceding the accident he had worked "on and off."  Stiles submitted the wages of several coworkers, including Troy Thibodeaux ("Thibodeaux"), Noel Valderrama ("Valderrama"), and Gilbert Sarver ("Sarver").  Thibodeaux's wage was about $23/hour and he earned an average weekly income of approximately $1,300.00, including overtime.  Valderrama's wage was about $18/hour and he earned an average weekly income of approximately $1,330.00, including overtime.  Sarver's wage was about $18/hour and he earned an average weekly income of approximately $1,025.00, including overtime.  The parties stipulated that Stiles' co-workers  worked in the "same or similar" employment as Stiles.

The ALJ awarded Stiles continuing temporary total disability benefits from May 23, 2003, based on an average weekly wage of $1,329.63.  Bay, Ltd. appealed the ALJ's decision to the BRB.  The BRB held that the ALJ properly determined Stiles' average weekly wage and affirmed.  Bay, Ltd. appeals the BRB's decision and claims that the ALJ and the BRB erred in holding that Valderrama's earnings reasonably reflected Stiles' wage earning capacity under § 10(c) of the LHWCA.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the BRB's decision affirming the ALJ's decision pursuant to the LHWCA. 33 U.S.C. § 921(c).  We review a decision of the BRB

"under the same standard as it reviews the decision of the ALJ: Whether the decision is supported by substantial evidence and is in accordance with the law." Empire United Stevedores v. Gatlin, 936 F.2d 819, 822 (5th Cir. 1991) (citations omitted).

When this court reviews decisions of the BRB, "our only function is to correct errors of law and to determine if the BRB adhered to its proper scope of review––i.e., has the Board deferred to the ALJ's fact-finding or has it undertaken de novo review and substituted its views for the ALJ's." Ceres Marine Terminal v. Dir., Office of Worker's Comp. Programs, 118 F.3d 387, 389 (5th Cir. 1997) (citing Avondale Shipyards, Inc. v. Vinson, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980) (internal quotation marks omitted)). Therefore, we must "conduct an independent review of the record to determine if the ALJ's findings are supported by substantial evidence." Avondale, 623 F.2d at 1119 n.1. We "may not substitute [our] judgment for that of the ALJ . . . nor may we reweigh or reappraise the evidence, but may only inquire into the existence of evidence to support the ALJ's factual findings." Empire, 936 F.2d at 822 (citations omitted).

## III. DISCUSSION

Section 910 provides several alternate formulas for calculating an employee's average weekly wage based upon the employee's average annual earnings. See 33 U.S.C. § 910(a)-(d); Empire, 936 F.2d at 821 ("The determination of the average weekly wage is governed by section 10 of the Act, which provides three alternative methods for calculating the employee's average annual earning capacity, 33 U.S.C. § 910(a)-(c), the amount of which is then divided by 52 weeks to arrive at the average weekly wage, 33 U.S.C. § 910(d)(1)."). Both parties concede that § 910(a) is inapplicable in this case, because Stiles had not "worked in the employment in which he was working at

the time of the injury . . . during substantially the whole of the year immediately preceding his injury." 33 U.S.C. § 910(a).

Section 910(b) is also not appropriate for calculating Stiles' average annual earnings, because there was no evidence of either Stiles' average daily wage or the daily wage of a similarly situated employee. Section 910(b) provides that

> [i]f the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings, if a six-day worker, shall consist of three hundred times the average daily wage or salary, and, if a five-day worker, two hundred and sixty times the average daily wage or salary, which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

33 U.S.C. § 910(b). The ALJ noted that there was no evidence of Stiles' average daily wage during the two weeks Stiles worked at Bay, Ltd. It then examined the wage history of similarly situated employees. The parties stipulated that Thibodeaux, Valderrama, and Sarver "work[ed] in the same or similar employment as Claimant." Sarver's "earning history [did] not provide an adequate basis to use Section 10(b)," and Thibodeaux's wage of $23/hour was not reasonably similar to Stiles' wage of $18/hour. The ALJ concluded that "only Mr. Valderrama would qualify as a fair and reasonable similar employee in the application of Section 10(b)." However, because there was no record of the number of hours Valderrama worked each day, the ALJ could not calculate Valderrama's average daily wage, as required by § 910(b). Section 910(b) is not appropriate for calculating average annual earnings where there is no evidence of either the employee's average daily wage or the daily wage of similarly situated employees. See id. Under such circumstances, § 910(b) cannot reasonably and fairly be applied. See 33 U.S.C. § 910(c).

4

The ALJ properly determined that § 910(c) was the appropriate standard for calculating Stiles' average annual earnings. Section 910(c) provides that if subsections (a) and (b)

> cannot reasonably and fairly be applied, [the employee's] average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee.

33 U.S.C. § 910(c). Thus, the statute allows the ALJ to calculate average annual earnings based upon three factors: (1) past earnings of the employee in the employment in which he was working at the time of the injury; (2) the earning history of employees of the same or most similar class working in the same or most similar employment; and (3) the employment history of the injured employee. Bay, Ltd. argues that the first and third factors go against the ALJ's findings and require this court to overturn the ALJ's holding. First, we consider the second factor, which the ALJ found to reasonably represent Stiles' annual earning capacity. Then, we examine the first and third factors to determine if either factor suggests that the ALJ's reliance upon the second factor alone was unreasonable.

The ALJ concluded that the critical factor in this case was the second factor: the earning history "of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality." Id. The ALJ reviewed the pay records for three similarly situated employees. The pay records reflected each employee's annual earnings and included their average weekly income and the number of hours worked each

week over a one-year period. From the evidence in the record, the ALJ determined that Valderrama was similarly situated to Stiles at the time of Stiles' injury. It also noted that Valderrama's income included overtime, but found that "one of the primary variables in [average weekly wage] calculations is the number of hours of work and overtime an employee can expect to accumulate." The ALJ concluded that Valderrama's annual earnings presented substantial evidence that Stiles could have enjoyed similar opportunities for overtime earnings. There was no evidence to show that Stiles would have less opportunities for overtime earnings than similarly situated employees such as Valderrama. Therefor, the ALJ used Valderamma's earnings to estimate Stiles' earning capacity at the time of the injury.

Bay, Ltd. argues that the first factor, which inquires into the past earnings of the employee in the employment in which he was working at the time of the injury, demonstrates that the ALJ's reliance upon Valderamma's wage was unreasonable. Bay, Ltd. urges this court to apply the framework from National Steel & Shipbuilding Co. v. Bonner, 600 F.2d 1288 (9th Cir. 1979), and hold that Stiles' past earnings with Bay, Ltd. represent the upper limit of his earning capacity. However, Bay, Ltd. misunderstands the critical finding in National Steel. In National Steel, the court held that "[t]he earlier wages [or past earnings] could be considered for what they were worth, but they are not binding upon the ALJ." Id. at 1293. The court emphasized that "[t]he trier can reasonably draw an inference that but for the injury, the worker would have continued to earn new, higher wages." Id. Thus, in National Steel, the Ninth Circuit found that an employee's disability wages could exceed the amount the employee had earned in his employment with the company in which he was working at the time of the injury. The court implicitly recognized that an employee might have more opportunity to earn wages at the time of his injury than he had prior to his injury. This conclusion is supported by the case law in

6

this circuit. See Empire, 396 F.2d at 823 (holding that earning capacity includes the amount that the employee would have had the opportunity to earn). The statute does not require the ALJ to limit the compensation award under § 910(c) based upon the wages the employee had earned at his job prior to his injury. The ALJ could reasonably consider the two other factors when determining the upper limit of Stiles' earning capacity.

The third factor requires the ALJ to give consideration to the employment history of the injured employee. Bay, Ltd. argues that Stiles' past earnings indicate that he would not have pursued the same overtime opportunities that Valderrama did; and therefore, any calculation that is based upon Valderrama's overtime earnings was error. Though this court held, in Empire, that the ALJ must take into account the employee's earnings over several years, it did not find that this was the critical factor. 936 F.2d at 822. All the statute requires is that the ALJ give regard to the relevant factors when determining what "reasonably represent[s] the annual earning capacity of the injured employee." 33 U.S.C. § 910(c); see Empire, 936 F.2d at 822; see also Fireman's Fund Ins. Co. v. Van Steene, 120 F.2d 548, 549-50 (9th Cir. 1941) (holding that the court is required to consider the factors but need not rely upon a factor if the factor does not reasonably represent the annual earning capacity of the injured employee).

The ALJ determined that a claimant's annual earning capacity, at the time of his injury, may be more than his average earnings over the previous one to five years, even if this means including opportunities for overtime. For this reason, the ALJ held that Stiles' opportunities for overtime should be included in the calculation of his earning capacity at the time of his injury. This court has found that the "prime objective of section 10(c) is to arrive at a sum that reasonably represents a claimant's annual earning capacity at the time of the injury." Empire, 936 F.2d at 822 (internal quotation marks and citations

omitted). In Empire, we found that an injured employee's earning capacity can be defined as: "the amount that the employee would have the potential and opportunity of earning absent the injury." Id. at 823 (citing Tri-State Terminals, Inc. v. Jesse, 596 F.2d 752, 757 (7th Cir. 1979) ("[E]arning capacity of [an] injured workman [can] mean the amount of earnings the claimant would have the potential and opportunity to earn absent injury.")); see also Palacios v. Campbell Indus., 633 F.2d 840, 843 (9th Cir. 1980) ("[I]t is necessary to consider [the employee's] 'ability, willingness and opportunity to work.'" (internal quotation marks and citations omitted)). Thus, this court has found that calculations of earning capacity allow for an inquiry into the opportunity to earn wages.

In sum, the ALJ considered all three factors in its determination of Stiles' average annual earning capacity, that is the amount he could have earned absent his injury. First, the ALJ considered Stiles' actual earnings at the time of injury. The ALJ reviewed Stiles' pay records, which stated that he had been working for Bay, Ltd. for about two weeks at the time of his injury, that his wage was $18/hour, and that in those two weeks he had earned $1,636.00. Second, the ALJ considered the earnings of other employees working in the same or similar type of employment. The ALJ concluded that one employee, Valderrama, was similarly situated to Stiles' and that his earnings represented a fair and accurate assessment of Stiles' earning capacity. This estimate included Valderrama's overtime earnings, because the ALJ concluded that Stiles' would have had the same opportunities to acquire overtime had he not been injured. Third, the ALJ considered Stiles' earning capacity over a period of years prior to his injury. The ALJ reviewed Stiles' social security records and found that Stiles' annual earning capacity over the previous five years ranged from $11,872.00 to $66,496.00.

After considering all of the factors, the ALJ concluded that Valderrama's annual earning capacity reasonably represented Stiles' annual earning capacity. The ALJ relied upon Valderrama's past earnings because he was working in a similar job at the same hourly wage and had similar opportunities as Stiles. The ALJ's decision to rely upon the past earnings of a similarly situated employee is in accordance with the law and there was substantial evidence to support the ALJ's calculation of Stiles' earning capacity.

## IV.  CONCLUSION

There was substantial evidence to support the ALJ's determination of Stiles' annual earning capacity and the decision was in accordance with the law. Thus, the BRB properly affirmed the ALJ's Decision and Order.  We AFFIRM.

AFFIRMED.