## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-60348

BOLLINGER SHIPYARDS INC; AMERICAN LONGSHORE MUTUAL
ASSOCIATION

Petitioners

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, US
DEPARTMENT OF LABOR; WARREN FONTENETTE, III

Respondents

Petition for Review of an Order of the
United States Department of Labor Benefits Review Board
BRB No. 07-0629

Before KING, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Bollinger Shipyards Incorporated seeks review of a decision by the Benefits Review Board that granted claimant Warren Fontenette benefits and attorneys' fees. Bollinger argues that the Board's decision is not supported by substantial evidence. Under our deferential standard of review, we DENY Bollinger's petition and AFFIRM the Board's decision.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND

Warren Fontenette was hired in January 2005 as a painter and sandblaster for Bollinger Quick Repair. Fontenette alleges that on the night of March 3, 2005, while he was climbing out of a hold on a barge, a wave rocked the barge. This caused Fontenette to fall and injure himself. Numerous discrepancies in Fontenette's story exist regarding his injury and how it was reported. Supposed witnesses to the injury have recounted the story in inconsistent manners. Bollinger contends that Fontenette was never injured at work, and therefore, it should not have to pay benefits to Fontenette.

After Bollinger refused to pay benefits to Fontenette, he filed a claim under the Longshore and Harbor Workers' Compensation Act. At the beginning of the administrative hearing, the parties entered a stipulation that included this: "if Claimant was injured, as alleged on March 3, 2005, his injury occurred during the course and scope of his employment with Employer." The factual issue continues to be whether the claimant's injuries occurred on that day.

At the end of the hearing, the ALJ found that Fontenette's testimony regarding his accident was unpersuasive and unreliable. However, the ALJ found that this was due to Fontenette's confusion and not to an intent to deceive. The ALJ also determined that Fontenette had been consistent in his description of his accident to his supervisors and doctors. Despite the credibility concerns, and due largely to medical expert testimony that Fontenette's condition was consistent with having been injured in a fall at work, the ALJ found sufficient evidence that Fontenette was injured at work. Benefits and attorneys' fees were granted to Fontenette. The Board affirmed.

Bollinger alleges four instances of error by the Board: (1) awarding any benefits to Fontenette, (2) finding that Bollinger had not established suitable alternative employment, (3) calculating Fontenette's damages, and (4) awarding Fontenette attorneys' fees and expenses. We will discuss each.

## II. DISCUSSION

Under the Longshore and Harbor Workers' Compensation Act, the Board must "accept the findings of the ALJ if they are rational and supported by substantial evidence in the record considered as a whole." *Gulf Best Elec., Inc. v. Methe*, 396 F.3d 601, 603 (5th Cir. 2004); *see also* 33 U.S.C. § 921(b)(3). "The Board may not substitute its judgment for that of the ALJ or engage in a *de novo* review of the evidence." *Gulf Best*, 396 F.3d at 603. We then review the Board's actions to determine whether it examined the ALJ's fact-findings for substantial evidence and the ALJ's legal conclusions for consistency with the law. *Id.* This court may not substitute its judgment or reweigh or reappraise the evidence. *Port Cooper/T. Smith Stevedoring Co. v. Hunter*, 227 F.3d 285, 287 (5th Cir. 2000). "The ALJ is the factfinder and is entitled to consider all credibility inferences. The ALJ's selection among inferences is conclusive if supported by the evidence and the law. The ALJ determines the weight to be accorded to evidence and makes credibility determinations." *Mendoza v. Marine Pers. Co.*, 46 F.3d 498, 500-01 (5th Cir. 1995) (internal quotation marks and citations omitted).

As can be seen, there is an extremely high hurdle to overcome for a petitioner seeking to reverse a Board order.

A.    *Fontenette's Benefits*

A presumption of coverage arises under Section 20(a) of the Longshore and Harbor Workers' Compensation Act once a claimant makes "a prima facie showing that (1) he suffered a harm and (2) a condition of the workplace could have caused, aggravated, or accelerated the harm." *Amerada Hess Corp. v. Dir., OWCP*, 543 F.3d 755, 761 (5th Cir. 2008); *see* 33 U.S.C. § 920(a). If the claimant is successful in raising this presumption, the employer can rebut the presumption by providing "substantial evidence to the contrary." *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 289 (5th Cir. 2003). The employer

must prove "through facts—not mere speculation—that the harm was *not* work-related." *Conoco, Inc. v. Dir., OWCP, U.S. Dep't of Labor*, 194 F.3d 684, 687-88 (5th Cir. 1999) (emphasis in original). If the employer successfully rebuts the presumption, it "drops out of the case and causation is determined by looking at the totality of the evidence." *Amerada Hess Corp.*, 543 F.3d at 761.

In this case, the ALJ found that the Section 20(a) presumption applied, that Bollinger had not rebutted it, and that, even if Bollinger had rebutted the presumption, the totality of the evidence favored Fontenette. The ALJ based this decision largely on the fact that medical expert testimony supported Fontenette's claim. Bollinger argues that Fontenette and his witnesses were not credible and that the injury could not have happened on the date and time that Fontenette alleged. However, the ALJ took this into consideration and still found that the evidence favored Fontenette. Medical testimony can form the basis for a successful claim for benefits regardless of whether the claimant is deemed credible. *See Conoco*, 194 F.3d at 691.

Doubts regarding the evidence are resolved in favor of the employee in accordance with the remedial purposes of this Act. *Empire United Stevedores v. Gatlin*, 936 F.2d 819, 822 (5th Cir. 1991). Substantial evidence supported the ALJ's decision to award benefits.

B.    *Suitable Alternative Employment*

The ALJ found that Fontenette was temporarily totally disabled. The Board affirmed. Bollinger does not dispute the finding. Once a prima facie case of total disability has been made, the burden shifts to the employer to show that there is suitable alternative employment available to the claimant. *La. Ins. Guar. Ass'n v. Abbott*, 40 F.3d 122, 127 (5th Cir. 1994).

Determining the availability of suitable alternative employment involves answering two questions:

(1) Considering claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of performing or capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure?

*New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042 (5th Cir. Unit A Nov. 1981). Using this standard, the ALJ reviewed the vocational evidence presented by experts hired by both parties.

The ALJ weighed the evidence, including the fact that some sedentary work was available to Fontenette. However, based largely on the opinion of Bollinger's medical expert, the ALJ held that, without treatment, there was no suitable alternative employment for Fontenette. Bollinger offered no evidence, medical or otherwise, to the contrary. We find that substantial evidence supported the ALJ's decision that suitable alternative employment was not available to Fontenette.

C.    *Calculation of Damages for Lost Wages*

When a claimant establishes disability resulting from a work injury, the ALJ next determines the claimant's average weekly wage. This is determined in one of three ways. Both parties agree that Section 10(c) of the Act governs the determination of Fontenette's average weekly wage. *See* 33 U.S.C. § 910(c). The purpose of Section 10(c) is to determine a "sum that reasonably represents a claimant's annual earning capacity at the time of the injury." *Empire United Stevedores*, 936 F.2d at 823 (citation omitted). Earning capacity is defined as "the amount the employee would have the potential and opportunity of earning absent the injury." *Id.* The ALJ has broad discretion in determining the earning capacity of a claimant at the time of the injury. *Id.*; *Mar-Con/Thunder Crane, Inc. v. Nelson*, 273 F. App'x. 370, 371 (5th Cir. 2008).

In this case, the ALJ concluded that Fontenette's average weekly wage should be calculated using the pay he had received during his eight weeks working for Bollinger. Bollinger challenges the ALJ's decision, arguing that Fontenette's average weekly wage should have been determined using his highest yearly wages in any prior year as determined by looking at his social security earnings, which would have resulted in a lower average weekly wage. We have noted in a previous case that a change in circumstances, such as a recent change in work, could provide a reason for finding annual earnings at the time of the accident greater than the claimant's actual annual earnings in the immediately preceding years. *New Thoughts Finishing Co. v. Chilton*, 118 F.3d 1028, 1031 (5th Cir. 1997) Fontenette had recently secured a new, steadier, higher paying job with Bollinger. He held that job for eight weeks before his alleged injury. We find the decision to be within the ALJ's range of discretion. We affirm the calculation of lost wages.

*D.    Attorneys' Fees*

Pursuant to 33 U.S.C. § 928(a), a claimant in Fontenette's position is eligible to have attorneys' fees awarded to him by the court. In a supplemental order, the ALJ approved an award of attorneys' fees to Fontenette. The Board affirmed that award. "The amount of attorney's fees is discretionary and may be set aside by the Board only if it is arbitrary, capricious, an abuse of discretion, or not in accordance with law." *Conoco*, 194 F.3d at 688. We do not find that the ALJ abused his discretion in awarding attorneys' fees to Fontenette.

In his brief, Fontenette also requests attorneys' fees for the appeals to the Board and then to this court. The Board's order noted that Fontenette had requested fees there, but that he had not yet filed a proper petition. As the prevailing party before the Board and also before this court, Fontenette may be eligible for an award of attorneys' fees resulting from each proceeding. However, Fontenette's counsel needs to submit a motion detailing his billing records for

his appeal to this court. Then we will make a decision regarding attorneys' fees incurred for the appeal from the Board. *See id.* at 692. The issue of attorneys' fees before the Board must first be decided by the Board. *Hole v. Miami Shipyards Corp.*, 640 F.2d 769, 773 (5th Cir. Unit B Mar. 1981).

## III. CONCLUSION

We DENY the petition for review and AFFIRM the Board. We instruct Fontenette to submit proper billing records to this court for the fees relevant to the appeal here. Upon our resolution of that issue, we will remand this case to the Board for its determination of the propriety and amount of attorneys' fees relevant to the appeal from the ALJ to the Board.