**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-60002**
_____

**DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, U.S.**
**DEPARTMENT OF LABOR,**

**Petitioner-Respondent,**

**versus**

**VESSEL REPAIR, INC.; ITT HARTFORD COMPANY,**

**Respondents-Petitioners,**

**versus**

**PEDRO T. VINA,**

**Respondent.**

_____

**Petitions for Review of an Order**
**of the Benefits Review Board**
_____

February 22, 1999

Before GARWOOD, BARKSDALE, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Chiefly at issue in these challenges to a Benefits Review Board decision involving Vessel Repair's liability to its injured employee, Pedro Vina, under the Longshore and Harbor Workers' Compensation Act, and its entitlement from the LHWCA second-injury fund administered by the Office of Worker's Compensation Programs (OWCP), is when Vessel Repair could have "reasonably anticipated" that fund's liability. Substantial evidence supports the administrative law judge's finding that such reasonable

anticipation arose *after* the consideration of the claim by the OWCP district director.  Also at issue are whether Vina's prior injury was "manifest" in a medical record prior to his employment-related injury; whether that employment-related injury caused his permanent partial disability; and the extent of his subsequent employment opportunity.  We **DENY** the petitions.

I.

Vina, born in 1943, injured his neck and back in 1986; was treated by Dr. Ramos; and was unable to work for nearly a year.  In 1988, he began work for Vessel Repair, a ship repair facility in Port Arthur, Texas.  In April 1992, while entering a barge to perform welding work, Vina fell, re-injuring his back and neck.

Vina was examined by two orthopedic surgeons.  Dr. Iceton primarily treated Vina, seeing him several times between June 1992 and February 1993.  In May 1993, Dr. Teuscher examined Vina at Vessel Repair's request.  It was evident to both doctors that the injury exacerbated a prior degeneration of Vina's back and neck. Vina did not, however, tell either doctor about the 1986 injury. The doctors agreed that Vina had reached maximum medical improvement in October 1992.

At that time, October 1992, Dr. Iceton had given Vina a "light duty slip", allowing him to return to work with lifting restrictions.  But, Vina was told by a Vessel Repair supervisor that there was no work for him, and he never returned.  (In March

1994, Vina performed some work for neighbors, but stopped because of neck and back pain.)

Vina applied for compensation under the LHWCA. Vessel Repair did not contest compensation for his temporary total disability from April to October 1992. But, it controverted his entitlement to permanent partial disability. The case was referred to the Office of Administrative Law Judges (OALJ) in October 1993.

In June 1994, two days before the discovery deadline and approximately two weeks before the scheduled hearing before the ALJ, Vessel Repair first learned of the existence of Vina's 1986 injury and his treatment by Dr. Ramos, who had since died. In particular, Vessel Repair first learned of a medical report by Dr. Ramos establishing the existence of Vina's prior injury and pre-existing condition. Accordingly, that July, Vessel Repair presented a second-injury fund claim under LHWCA § 8(f), 33 U.S.C. § 908(f), to both the ALJ and the OWCP district director. The district director denied the claim as untimely.

Earlier, when Dr. Teuscher, at Vessel Repair's request, had assessed the permanent injury in May 1993, he stated that "it is difficult to accurately quantify that portion which was preexisting and that portion which is attributable to his current injury". Later, however, upon viewing the 1987 x-rays taken for Dr. Ramos after the 1986 injury, Dr. Teuscher modified his opinion. He saw no difference between the x-rays before and after the 1992 injury,

3

and therefore considered that there was no objective basis for different employment restrictions before and after that accident.

On the other hand, Dr. Iceton testified that, while he could not apportion causation of permanent disability between the 1992 injury and Vina's prior condition, each was a cause; and that knowing the details regarding the 1986 injury would not change this assessment, because he had inferred a prior degenerative disc disease without such information.

Dr. Teuscher was unable with medical tests to confirm Vina's complaints of pain. He indicated, however, that Vina may require permanent work restrictions because of his reports of pain. Dr. Iceton found Vina's complaints credible and his behavior consistent with such pain. And, Vina testified that he suffered much more serious pain two years after the 1992 injury than he did before it.

Two vocational experts, Quintanilla and Kramberg, assessed Vina's employment prospects. Based on an interview of Vina, a review of his medical records, and research into the job market in the Port Arthur area, Quintanilla estimated that several sorts of jobs would be appropriate; he identified 11 particular jobs. Kramberg testified, however, that all but two of those jobs were inappropriate given Vina's inability to speak, read or write English; the lifting and gaze restrictions specified by Drs. Iceton and Teuscher; the location of the jobs; or other factors. In fact, Kramberg had doubts about the remaining two jobs.

4

In October 1995, the ALJ ruled in favor of Vina regarding the causation of permanent partial disability by the 1992 accident. As for future employment, the ALJ substantially agreed with Kramberg's conclusion. The ALJ assessed Vina's residual weekly earning capacity and found Vessel Repair eligible for § 8(f) relief, thereby transferring its liability beyond the first 104 weeks of permanent disability payments to the OWCP second-injury fund.

The Benefits Review Board (BRB) agreed, except for the assessment of residual earning capacity (it decided that the 1992 minimum wage should have been used, without inflation adjustment).

## II.

We review BRB decisions *de novo*, applying the same standard as the Board and so upholding an ALJ's decision when in accordance with law and supported by substantial evidence. 33 U.S.C. § 921(b)(3); *e.g., **New Thoughts Finishing Co. v. Chilton***, 118 F.3d 1028, 1030 (5th Cir. 1997).

## A.

Vessel Repair asserts, first, that Vina's permanent disability was not due to his 1992 injury; second, that the ALJ erred in finding only minimum-wage employment available. Vina points to conflicting evidence before the ALJ supporting his position and which the ALJ chose to credit.

1.

In contending that the 1992 accident did not cause any portion of Vina's permanent disability, Vessel Repair maintains that such disability was due solely to prior degeneration, and particularly to the 1986 injury.

Preliminarily, we dismiss Vessel Repair's suggestion that the ALJ did not engage in a consideration of all of the medical evidence regarding causation, or that the ALJ applied the "true doubt rule" repudiated in **Director, OWCP v. Greenwich Collieries**, 512 U.S. 267 (1994). The ALJ's opinion summarizes exhaustively the evidence and assesses its credibility in detail. Whether Vina's 1992 injury caused his disability is discussed at length and with a full consideration of all the evidence.

Pointing to the testimony of Dr. Teuscher, who, upon viewing Dr. Ramos' records concerning the 1986 injury, revised his earlier agreement with Dr. Iceton on causation, Vessel Repair asserts that Dr. Iceton substantially agreed with Dr. Teuscher, and that no substantial evidence suggests that the 1992 injury contributed to Vina's disability. However, Dr. Iceton was not equivocal regarding causation of permanent injury: while he could not determine how much the prior condition and the 1992 injury each contributed to permanent disability, both were factors. Regarding Vina's permanent impairment, Dr. Iceton stated plainly that "some of it was caused by the [1992] accident".

6

And, Dr. Teuscher was less emphatic than Vessel Repair suggests. His only unequivocal testimony on causation was that the 1992 injury was not the *sole* cause of Vina's disability, which is undisputed. The only legally relevant question is whether the 1992 injury is *a cause* of that disability.

Dr. Teuscher stated that, as a physician, he would place no work restrictions on Vina as a result of the 1992 injury; but, he then allowed that additional restrictions would be appropriate "on a symptomatic basis", i.e., because of Vina's pain. In addition, when asked whether Vina's symptoms of pain were caused by the 1992 injury, the doctor replied: "the issue here is that I don't have an explanation for his source of pain".

Independent of the medical testimony, the ALJ also credited Vina's testimony in July 1994 of present pain greater than that suffered before the 1992 injury. Dr. Iceton also found Vina's reports of pain credible in the light of his repeated medical examinations. While the tests Dr. Teuscher performed did not corroborate Vina's pain, neither did he state that it did not exist; he conceded that permanent disability could be based upon it. Vessel Repair does not dispute that "a finding of disability can be based on nothing more than a claimant's credible reports of pain". *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 944 (5th Cir. 1991) (quoting this statement of the law by the ALJ and reinstating his order relying upon it).

7

Citing *Consolidation Coal Co. v. OWCP*, 54 F.3d 434, 438 (7th Cir. 1995), Vessel Repair questions the ALJ's reliance on Dr. Iceton being Vina's treating physician and seeing him several times, while Dr. Teuscher only saw him once. But, that case involved an ALJ who conceded that evidence was equally weighted; the Seventh Circuit referred to cases disparaging a "mechanical determination" favoring a treating physician's opinion and the treatment of physicians' views as "necessarily" weightier than a specialist's. *Id.* at 438.

Here, the ALJ explained why more extended examination of the patient would render more reliable a doctor's assessment of the patient's subjective pain and its cause. In sum, substantial evidence supports the ALJ in crediting Vina's testimony and Dr. Iceton's repeated observations of him over Dr. Teuscher's inferences from x-rays and a single interview.

2.

In challenging the future employability decision, Vessel Repair raises several questions regarding Kramberg's assessment, referring, for instance, to his not explaining to whom he talked in investigating two of the job possibilities identified by the other expert (Quintanilla), and to Kramberg's "cleverly ambiguous and unverifiable comments". However, such concerns should have been

8

directed to Kramberg, or answered with evidence to contradict his testimony.[*]

Vessel Repair introduced no response or explanation to rebut Kramberg's assessment of Vina's job prospects. Accordingly, there is substantial evidence to support the ALJ's future employment finding.

B.

The DOWCP challenges second-fund injury liability, covered by LHWCA § 8(f), 33 U.S.C. § 908(f): subject to certain exceptions, where an employee has pre-employment permanent partial disability and then, during employment, suffers an injury increasing that disability, the employer's liability is limited to 104 weeks of coverage, with the remainder paid from a special fund.

Courts have added a "manifest" requirement. "To satisfy the requirements of section 8(f), this court has required an employer to prove that the claimant's pre-existing permanent partial disability was 'manifest' to the employer prior to the current

---

[*]In one case of the identification of contact persons, such a question *was* asked — and answered – during Kramberg's testimony. Vessel Repair asked, concerning Allied Fabrication and Welding, whether Kramberg had spoken to Damon, "the person that worked on the computer in the office"; and Kramberg answered "That's correct". Now, however, Vessel Repair complains, concerning the same employer, that Kramberg "does not identify the individual with whom he spoke, so that his comments could be verified". Concerning Tubal-Cain Industries, Vessel Repair maintains that Quintanilla identified the person to whom he spoke, Judice, but Kramberg did not. However, in his deposition, Kramberg refers to what "Mr. Judice indicated to me".

9

injury." ***Ceres Marine Terminal v. Director, OWCP***, 118 F.3d 387, 392 (5th Cir. 1997). This "manifest" requirement has been added in the light of § 8(f)'s purpose to protect a worker with permanent partial disability from hiring discrimination. Of course, such discrimination is not possible where such disability is unknown and unknowable. *See **id.*** As discussed *infra*, such knowledge can be constructive.

The fund liability is contested in two ways: first, the "absolute defense" of § 908(f)(3) applies; second, Vina's pre-employment injury was not "manifest".

1.

An employer's second-injury fund application is to be made to the deputy commissioner (also termed the district director) prior to his consideration of the compensation claim. 33 U.S.C. § 908(f)(3). That subsection further provides:

> Failure to present such request prior to such consideration shall be an absolute defense to the special fund's liability for the payment of any benefits in connection with such claim, *unless the employer could not have reasonably anticipated the liability of the special fund prior to the issuance of a compensation order*.

33 U.S.C. § 908(f)(3)(emphasis added). Vessel Repair relies on the emphasized language and, in particular, the manifest requirement, maintaining that, when this matter was before the district director, because it did not then know of the treatment by Dr. Ramos, it could not have reasonably anticipated that Vina's prior

10

condition was manifest and so could not have reasonably anticipated special fund liability.

The fact-finding by the ALJ regarding the timing of Vessel Repair's knowledge of Dr. Ramos' report is not disputed by DOWCP. It is also undisputed that, without that report, the manifest requirement is unmet, and so the second-injury fund is not liable. (As discussed *infra*, DOWCP maintains that, even *given* the report, the requirement is unmet.)

Disputing none of these facts, DOWCP asserts only that Vessel Repair should have presented its "excuse" to the district director and requested an extension prior to his referral to the OALJ. However, it goes without saying that, where an employer's reason for not presenting an application before such referral is because it could not reasonably anticipate second-injury fund liability until *after* the referral, it cannot present the reason *prior* to referral.

We therefore decline DOWCP's invitation to impose on employers a requirement to explain to the district director circumstances which, to the employers' knowledge, do not then yet exist. The LHWCA explicitly contemplates excuses which may arise after the referral to the OALJ; moreover, by their nature, such post-referral excuses must be assessed by the ALJ rather than by the district director.

11

Relatedly, DOWCP puts its claim in terms of jurisdiction and the ALJ's authority to review the district director, citing **Bath Iron Works Corp. v. Director, OWCP**, 950 F.2d 56 (1st Cir. 1991). There, however, the court noted that, "importantly, Employer-Carrier possessed other information earlier which in the factual assessment of the ALJ and the Benefits Review Board enabled [Employer-Carrier] to 'reasonably anticipate' the liability of the special fund". **Id.** at 59. Because here, DOWCP does not contest the facts regarding reasonable anticipation, **Bath Iron Works** is inapposite.

Moreover, as its quoted language shows, the First Circuit in **Bath Iron Works** considers reasonable anticipation to turn on fact-finding within the province of the ALJ, rather than that of the district director. We agree with the First Circuit there and with a recent Fourth Circuit opinion (upon which DOWCP relies), which holds that "reasonable anticipation" is essentially a factual matter appropriate for an ALJ's assessment. See **Director, OWCP v. Newport News Shipbuilding and Dry Dock Co.**, 134 F.3d 1241, 1246 (4th Cir. 1998) (remanding to the ALJ, *not* the district director, for failure to make required factual findings regarding reasonable anticipation) ("Only an ALJ has the power to make the factual findings, assess the credibility of the relevant witnesses, and resolve any inconsistencies in the evidence necessary to determine if [the employer] demonstrated that it could not have 'reasonably

12

anticipated' the late-asserted ground for § 8(f) relief at the time the company initially filed its application with the district director."). Accordingly, finding substantial evidence in the record to support the ALJ's finding on reasonable anticipation, we must defer to the ALJ.

DOWCP urges that Vessel Repair was obliged to engage in discovery while the matter was pending before the district director in order to "develop its case" and learn whether Vina's prior condition was manifest in a medical record. On this record, we disagree. A great number of people suffer from back conditions without having been treated; for example, Dr. Teuscher testified that degenerative disk disease is a natural consequence of aging. Accordingly, the bare fact of a back condition is not necessarily a warrant for discovery regarding the existence of a medical record making the condition manifest. *Cf*. ***Jones v. Capital Cities/ABC Inc.***, 168 F.R.D. 477, 480 (S.D.N.Y. 1996) ("The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists."). ***Cajun Tubing Testors, Inc. v. Hargrave***, 951 F.2d 72 (5th Cir. 1992), upon which DOWCP relies, explicitly predicates the duties to submit a § 8(f) claim and to take discovery on knowledge of a claim: "An employer is clearly obligated to submit a claim *when it knows that it has such a claim*". ***Id***. at 75 (emphasis added).

13

DOWCP also contests whether Vina's prior injury was "manifest" from medical records pre-dating the 1992 injury. The parties agree that an injury or condition is manifest if diagnosed and identified in a medical record, for then the employer has constructive knowledge of its existence.

In urging that no medical record exists identifying Vina's condition, DOWCP points particularly to Dr. Ramos' statement in one of his reports: "The computerized tomographic examination of the cervical spine is normal with no findings to suggest a herniated disc or bony spinal stenosis". Another of Dr. Ramos' reports indicates plainly, however, that Vina had suffered an injury at work. Dr. Ramos also stated, "The preliminary scout radiograph demonstrates degenerative narrowing of the C4-5, C5-6 and C6-7 disc spaces. Despite this narrowing, I do not see any findings to suggest a herniated disc". And, a letter by Dr. Ramos to Vina's employer over one year after the 1986 injury reports continuing and worsening lumbosacral pain and neck discomfort. These documents provide substantial evidence to support the ALJ's finding that Vina's prior condition increasing his susceptibility to become disabled if re-injured was manifest.

V.

Accordingly, the petitions are

**DENIED.**