United States Court of Appeals
Fifth Circuit

**F I L E D**

July 28, 2004

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
# for the Fifth Circuit

---

Nº 03-60934
Summary Calendar

---

INGALLS SHIPBUILDING, INC.,
NOW DOING BUSINESS AS NORTHROP GRUMMAN SHIP SYSTEMS, INC.,

Petitioner,

VERSUS

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Respondent,

LEON BOLDEN,

Claimant-Respondent.

---

Appeal from an Order of
the Benefits Review Board
m 02-0859
m 01-0693
m 00-465

---

Before SMITH, DEMOSS, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge.[*]

This is an appeal by employer Ingalls Shipbuilding, Inc. ("Ingalls"), of a final order of the Benefits Review Board ("BRB"). Agreeing with the findings of fact and conclusions of law of the administrative law judge ("ALJ") in his Decision and Order on Second Remand, the BRB ruled that Ingalls owed Leon Bolden disability compensation and medical expenses under the Longshore and Harbor Workers' Compensation Act ("the Act"). In addition, the BRB denied Ingalls partial relief under § 8(f) of the Act.[1] We affirm.

## I.

The facts are undisputed. Bolden is a fifty-five-year-old electrician who worked for Ingalls intermittently for nineteen years beginning in the fall of 1969. He was employed continuously from 1987 until May 1995. In 1988, he fell on his back while volunteering at his child's school. In addition to this back injury, Bolden suffered a total of six work-related injuries over the course of his employment at Ingalls. All of these injuries were minor, and except for the injury to his wrist in 1991, Bolden recovered completely and re-turned to work.[2]

In February 1995, bothered by pain in his legs and feet, Bolden sought relief from Dr. Wetzel, a chiropractor, who referred him to an orthopedic surgeon, Dr. Semon, in April of that year. Semon diagnosed Bolden with a bulging or herniated disc for which he was treated conservatively. When treatment resulted in no lasting improvement, Bolden filed for short-term disability in May.

In June, Semon performed two diskograms and a percutaneous diskectomy. Finding that the June procedure had not relieved the pain, Semon recommended a lumbar laminectomy, an open surgical procedure, in September. Hesitant to undergo such a procedure, Bolden decided to live with the pain and returned to work for some two weeks between August 28 and November 30, 1995, before deciding he could no longer work in his condition.

On September 11, 1995, an attorney informed Bolden that he did not have to prove a specific date and time of injury to receive benefits under the Act. He alleges that he had not filed for benefits from Ingalls for his back injury earlier because he was unable to pinpoint a specific incident that led to disability. On learning, however, that no such date was required, he promptly filed a Form LS-203 and notified Ingalls on September 25.

On November 30, 1995, Bolden sought treatment from Dr. Fontana, an orthopedic surgeon who had treated his wrist injury in

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Section 8(f) shifts, from the employer to the Special Fund established by the Act, liability to pay compensation for permanent disability after 104 weeks. 33 U.S.C. §§ 908(f), 944.

[2] The wrist injury in 1991 resulted in a three percent impairment to Bolden's upper extremity and permanent restrictions. These restrictions, however, did not inhibit him from performing his routine job duties.

1991 and 1992. Fontana diagnosed degenerative disc disease and recommended additional conservative treatment. In early 1996, Bolden was diagnosed with arterial insufficiency and underwent several procedures to correct this vascular condition. He also was found to suffer from peripheral neuropathy.

Semon and Fontana are of the opinion that Bolden's other conditions are unrelated to his employment and back injury. They also agree that Bolden's degenerative back disease can be caused by "regular wear and tear" and that specific events do not always occur to signal a back injury like his. Neither doctor states definitively that Bolden's injury was caused by his work, though neither is willing to state unequivocally that it was not.

## II.

This case was remanded twice by the BRB before the BRB affirmed the ALJ's Order on Second Remand and entered a final order. In his first decision, the ALJ denied Bolton's claim for disability benefits, finding that he had failed to give timely notice of injury under § 12(a) of the Act, 33 U.S.C. § 912(a), and that claimant's failure was not excused under § 12(d).

In the first appeal, the BRB found that the ALJ had erred in his consideration of timeliness by failing to determine the date on which Bolden became, or should have become, aware that his injury was in fact work-related. The BRB also stated that the ALJ had erred by failing to give Bolden the benefit of the § 20(b), 33 U.S.C. § 920(b), presumption that notice had been filed timely under § 12(a).

On remand, the ALJ, applying the § 20(b) presumption, still determined that Bolden's notice was untimely and thus he was ineligible for disability benefits. The ALJ also concluded that Bolden, although triggering the § 20(a) presumption (that the injuries were causally related to his employment), had failed to meet his burden of proof in the face of Ingalls's rebuttal and therefore was not entitled to medical benefits either. Bolden again appealed to the BRB.

The BRB determined that the ALJ had erred in finding that Ingalls had established a rebuttal of the § 20(a) presumption. Given this failure, the BRB then opined that Bolden's condition is work-related as a matter of law, and the only question that remained was the amount of compensation. The BRB also reversed the ALJ's finding that Bolton's claim was barred for lack of compliance with § 12(a), noting that no evidence existed in the record to support that finding. The BRB then remanded for a second time for the ALJ to consider the merits of the claim.

Addressing the merits on second remand, the ALJ found that Bolden had established a *prima facie* case of total disability and that Ingalls had offered no substantial evidence to the contrary. Accordingly, the ALJ awarded temporary total disability compensation from May 9, 1995, through November 29, 1995 (the day before, according to Fontana, Bolden reached "maximum medical improvement"). Ingalls also was ordered to pay permanent total disability compensation from November 30, 1995, forward. These payments were to be made based on Bolden's average weekly wage of $485.88.

Because the BRB had already determined that Bolden's condition was work-related as a matter of law, the ALJ also found that Bolden was entitled to all reasonable medical expenses incurred with Fontana relating to Bolden's

3

lower back condition. The ALJ also denied Ingalls's request for partial relief from its compensation liability under § 8(f). As we have said, the BRB affirmed.

### III.

We have jurisdiction over Ingalls's petition for review pursuant to § 21(c) of the Act, 33 U.S.C. § 921(c), and FED. R. APP. P. 15(a). We review BRB decisions *de novo*, applying the same standard as does the BRB, upholding the decision of the ALJ when it is in accordance with law and supported by substantial evidence. 33 U.S.C. § 921(b)(3); e.g., *New Thoughts Finishing Co. v. Chilton*, 118 F.3d 1028, 1030 (5th Cir. 1997).

### IV.

Ingalls appeals the BRB's final order affirming the ALJ's decision and order on second remand. Specifically, Ingalls questions the BRB's conclusion that Bolden established a *prima facie* case (thus invoking the § 20 presumption), as well as its finding that Bolden failed to rebut that presumption. Additionally, Ingalls argues that Bolden's inability to work is a result not of his back condition, but of other medical problems, so Ingalls should not be liable for disability benefits. In the alternative, Ingalls urges that if it is liable, it is eligible for partial relief under § 8(f). Finding no errors of law or clear errors of fact, we deny the petition for review.

### A.

Under § 12(a) of the Act, a claimant who sustains a traumatic injury is required to file notice of the injury within thirty days of the date on which he became aware, or should have become aware, of the relationship between his injury and his employment. 33 U.S.C. § 912(a). He is entitled to the presumption that the notice was timely filed, and the burden rests with the employer to prove otherwise. 33 U.S.C. § 920(b).

On second appeal, the BRB decided that the ALJ's finding that the § 20(b) presumption had been rebutted contravened all available evidence and that Bolden had demonstrated unawareness of the relatedness of his injury to work until September 1995, when he filed his claim. The facts provide substantial evidence for this finding, so Bolden's eligibility for disability benefits is not time-barred.

### B.

To become eligible for disability and medical benefits under the Act, a claimant must establish causation between the injury and his job. Ingalls contends that Bolden fails to qualify for the § 20(a) presumption, which assumes that his injury is causally related to his employment.

To invoke the presumption, a claimant must initially demonstrate that he "suffered a harm and that employment conditions existed which *could have caused, aggravated or accelerated* the condition." *Merrill v. Todd Pac. Shipyards Corp.*, 25 BRBS 140 (1991) (emphasis added). Ingalls inadequately states the burden a claimant must meet to invoke the presumption. Ingalls avers that a claimant must prove that "he sustained an injury in the course and scope of his employment." Indeed, the Act requires only that a claimant prove conditions that *might* have caused, aggravated, or accelerated an injury, to shift the burden of proof to the employer. The claimant need not prove that his job was the proximate cause of his injury, but merely that it may have been a cause.

Bolden's employment at Ingalls included the lifting and carrying of heavy boxes on a

daily basis. Such strenuous work might easily have caused or worsened his back condition over time. The ALJ, on first remand, was therefore correct in finding that Bolden had met his initial burden and that the § 20(a) presumption was invoked.

Once a claimant has invoked this presumption, the burden shifts to the employer to rebut the presumption with "substantial countervailing evidence." *See James v. Pate Stevedoring Co.*, 22 BRBS 271 (1989). In the second appeal, the BRB found as a matter of law that Ingalls had failed to meet its burden and that Bolden's injury was work-related as a matter of law. Citing the ALJ's reasons in its first remand, Ingalls argues that the presumption was successfully rebutted.[3] Ingalls contends that these reasons constitute the substantial evidence necessary to rebut the presumption. We disagree.

Bolden's own opinion as to the ultimate cause of his injury should not be controlling. He is not a medical expert, so his beliefs regarding causality are alone insufficient. Moreover, assuming *arguendo* that Bolden initially injured his back in 1988, Ingalls would still bear the burden of proving that Bolden did not aggravate that injury over the next few years while at work.

---

[3] The ALJ found that Ingalls had rebutted the presumption based on the following: (1) Bolden's and Semon's statements on Bolden's group health insurance forms relating the injury to a non-industrial fall in 1988; (2) Bolden's statements to his doctors that the injury was caused by the 1988 fall; (3) Bolden's admission that he did not know the cause of his injury; and (4) the doctors' opinions that every living activity can cause Bolden's condition.

Ingalls provides no evidence whatsoever to counter this possibility. The remaining evidence Ingalls cites is also insufficient, because it merely indicates an unwillingness on the part of Bolden's doctors to state with certainty that his injury was caused by his job. As we have noted, however, those doctors are just as unwilling to state that the injury was *not* work-related. Because the medical testimony is equivocal regarding the etiology of the injury, this remaining evidence is insufficient to rebut the § 20(a) presumption, *see Phillips v. Newport News Shipbuilding & Dry Dock Co.*, 22 BRBS 94 (1988), so Bolden's injury is work-related as a matter of law.

C.

Once Bolden has established causation, the burden shifts to him prove the nature and extent of his disability. Bolden establishes a *prima facie* case of total disability if his work injury prevents return to his usual place of employment. *See Mijangos*, 948 F.2d at 944. Testimony by Bolden and his doctors makes a *prima facie* case for total disability, and the burden shifts to Ingalls show that Bolden is at most partially disabled, which can be demonstrated by showing realistic job alternatives that are suitable for Bolden, given his age, education, and physical restrictions. *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042 (Former 5th Cir. Nov. 1981).

Ingalls offers no reasonable job alternatives for Bolden and is thus unable to rebut the presumption of total disability. Ingalls's contention that Bolden suffers from other unrelated disabilities that also prevent him from working is irrelevant, because Bolden is still entitled to total disability benefits so long as his work injury is *a* cause of his disability. *See Director, OWCP v. Vessel Repair, Inc.*, 168 F.3d 190 (5th Cir. 1999). Even if Bolden's vascular

5

disease is more serious than his degenerative back disease, Ingalls has offered no evidence to suggest that he could continue to work if he suffered only from his back ailment. Agreeing with the findings and conclusions of the ALJ in his third order, we deny review of the BRB's decision award total disability damages in the amount (and under the terms) set forth.

### D.

Having established that his injury was work-related as a matter of law, Bolden may assess to Ingalls all reasonable and necessary medical expenses related to that injury. *See Parnell v. Capitol Hill Masonry*, 11 BRBS 532, 539 (1979). But, an employee cannot receive reimbursement for medical expenses under § 907(d)(1) of the Act unless he has first requested authorization before obtaining the treatment, except in cases of emergency. 20 C.F.R. § 702.421.

Ingalls was not notified of Bolden's injury until September 11, 1995. If an employer has no knowledge of an injury, the employee is not entitled to reimbursement for any money spent before notifying the employer. *McQuillen v. Horne Bros., Inc.*, 16 BRBS 10 (1983). Therefore, Ingalls is not liable for any medical expense incurred before notification, and the ALJ on second remand was correct in finding that Ingalls did not owe Bolden for his visits to Wetzel and Semon. Once Ingalls was notified in September, however, it became liable for all subsequent medical expenses, including continuing visits to Fontana. The ALJ correctly limited Bolden's recovery to only those visits related to his back injury, leaving treatment of his unrelated vascular condition and neuropathy to him.

### E.

Section 8(f) of the Act allows that an em-ployer may limit its liability for compensation payments for permanent disability if the following elements are present: (1) The claimant has a pre-existing permanent partial disability; (2) the pre-existing disability was manifest to the employer; and (3) the disability that exists after the work-related injury does not result solely from the injury, but is a combination of both that injury and the existing permanent partial disability. *Director, OWCP v. Cargill, Inc.*, 709 F.2d 616, 619 (9th Cir. 1983). Ingalls contends it is eligible for § 8(f) relief because Bolden suffered previous work-related injuries to his ankle, shoulder, and wrist. Bolden, however, made a full recovery from all prior work-related injuries save his wrist injury, which resulted in a three percent loss of mobility (although this did not seem to impair his ability to work). Although Ingalls was aware of all these prior injuries, none of them combined with Bolden's back injury to render him total disabled. Therefore, element three is not met with respect to these injuries, and Ingalls cannot recover.

In the alternative, Ingalls argues that Bolden suffered from neuropathy and vascular problems that, coupled with his back injury, render him totally disabled. Though it is true that these conditions seriously and permanently impair Bolden's ability to work, Ingalls was unaware of these disabilities until well after Bolden left its employ, and element two of the test is not met. Thus, Ingalls is entitled to no relief under this alternative theory, so we deny review of the BRB's decision not to limit Ingalls's liability under the Act.

The petition for review is DENIED.

6