# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 20, 2008

Charles R. Fulbruge III
Clerk

No. 07-60541

M & M PROJECT STAFFING; GRAY INSURANCE COMPANY

Petitioners

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; RAMIRO C. CARDENAS

Respondents

---

Petition for Review of an Order
of the Benefits Review Board
No. 06-0778

---

Before JONES, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.

PER CURIAM:[*]

M&M Project Staffing and Gray Insurance Company petition for review of a final order of the Benefits Review Board (BRB) affirming an order by the Administrative Law Judge (ALJ) awarding compensation to Ramiro Cardenas under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq. Because substantial evidence does not support the ALJ's calculation of Cardenas's average weekly wage, we REVERSE and REMAND.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On April 7, 2004, Ramiro Cardenas injured his lower back while working as a welder for M&M Project Staffing ("M&M"). Cardenas had worked for M&M on multiple occasions before his injury. He was never terminated for misconduct, but was frequently laid off after finishing a project. Cardenas received unemployment compensation in 2002, 2003, and 2004.

Cardenas sought disability benefits under the LHWCA for his back injury, and the parties proceeded to trial before the ALJ on multiple issues. The ALJ entered an Order awarding Cardenas benefits based on an average weekly wage of $1,038.70. The ALJ reached this figure by dividing the amount Cardenas earned in the year before his injury, $34,276.98, by 33, the number of weeks Cardenas worked during that year.

Petitioners filed a motion for reconsideration solely on the average weekly wage calculation, arguing that the ALJ erred by not dividing Cardenas's earnings by 52 weeks. The ALJ denied the motion, and the BRB affirmed the ALJ's decision. Petitioners timely filed this appeal.

II.

We review the BRB's decision only for errors of law and to determine whether it properly concluded that the ALJ's factual findings were supported by substantial evidence on the record as a whole. James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 429 (5th Cir. 2000). Substantial evidence is evidence that provides "a substantial basis of fact from which the fact in issue can be reasonably inferred," or such evidence that "a reasonable mind might accept as adequate to support a conclusion." New Thoughts Finishing Co. v. Chilton, 118 F.3d 1028, 1030 (5th Cir. 1997). The substantial evidence standard is less demanding than that of preponderance of the evidence, and the ALJ's decision need not constitute the sole inference that can be drawn from the facts. Id.

On appeal, the only dispute between the parties concerns the ALJ's computation of Cardenas's average weekly wage. A claimant's average weekly wage is calculated in two steps: First, a claimant's average annual earnings are determined by utilizing one of three methods set forth in 33 U.S.C. § 910(a)-(c). Section 910(a) applies when the claimant worked in the same or comparable employment for substantially the whole of the year immediately preceding the injury. It provides a specific formula for calculating annual earnings based on the average daily wage the claimant actually earned on the days he was employed. When a claimant's employment is regular and continuous but the claimant has not been employed in that employment for substantially the whole of the year, § 910(b) may be applied. Calculations under § 910(b) are based on the wages of comparable employees, engaged in comparable work, in a similar locale. Section 910(c) is used when the claimant's work is "inherently discontinuous or intermittent." Empire United Stevedores v. Gatlin, 936 F.2d 819, 822 (5th Cir. 1991). Section 910(c) provides:

> If either [subsection (a) or (b)] cannot reasonably and fairly be applied, such average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee.

Second, the claimant's average annual earnings are divided by 52 pursuant to § 910(d)(1), which states that an employee's average weekly wages "shall be one fifty-second part of his average annual earnings."

In this case, the ALJ applied § 910(c) and determined that Cardenas's average annual earnings were $34,276.98. The ALJ then divided this figure by

33, the number of weeks Cardenas worked in the year before his injury, to reach an average weekly wage of $1,038.70.

The parties agree that the ALJ correctly utilized § 910(c), as opposed to subsections (a) or (b), in calculating Cardenas's average annual earnings. However, Petitioners contend that the ALJ violated § 910(d)(1) by dividing Cardenas's average annual earning by 33 instead of 52.

Despite the plain language of § 910(d)(1), the ALJ's failure to divide by 52 does not necessarily require reversal. In Gallagher, an ALJ divided the claimant's annual earning by 48, to account for four weeks that the claimant was unable to work due to a previous injury. 219 F.3d at 433-434. The employer argued that using the number 48 as a divisor violated the clear mandate of § 910(d)(1). This court found, however, that "the ALJ's decision to carve out the four-week period of lost work facilitated the goal of 'mak[ing] a fair and accurate assessment' of the amount that [the claimant] 'would have the potential and opportunity of earning absent the injury.'" Id. at 434. This court has likewise affirmed an ALJ's use of 27 weeks as a divisor, when the ALJ did so to account for time the plaintiff was out of work due to a previous injury. See Staftex Staffing v. Director, OWCP, 237 F.3d 404, 407-08 (5th Cir. 2000). In Staftex, this court explained:

> Although section 910(d) states that the ALJ should divide annual earnings by fifty-two, the Board has frequently held that, when calculating annual earnings, an ALJ may account for time lost due to a claimant's job-related injury. Thus, although the ALJ should have increased its estimation of [the claimant's] annual wage, rather than increased his weekly wage, in order to account for his knee injury, this error was harmless. Either approach yields the same mathematical result.

Id. at 408 (internal citations omitted).

Cardenas argues that, as in Staftex and Gallagher, the ALJ's decision to divide by fewer than 52 weeks is harmless. Cardenas maintains that the ALJ

could have reached the same average weekly wage of $1,038.70 by increasing his average annual earnings to $54,012.40 to reflect the amount he could have made had work been available year-round, and then dividing by 52.[1]

However, in order to credit an intermittent worker with the earning capacity of a full-time worker, the record must contain evidence that the claimant would have the opportunity to be employed year-round.  See New Thoughts, 118 F.3d at 1031.  To hold otherwise would defeat one of the central purposes of having three different methods of calculating a claimant's average weekly wage.  Id. at 1031 n.3.  As this court has explained, "one of the primary reasons for the differentiation in § [910(c)] is that it would be unfair to the employer to calculate an intermittent employee's wage under §§ [910(a) or (b)], since to do so would treat the claimant as a full-time worker and thereby exaggerate his loss."  Id. (quoting Tri-State Terminals, Inc. v. Jesse, 596 F.2d 752, 756 n.3 (7th Cir. 1979)).

In New Thoughts, the claimant testified that his work in the construction industry during the previous three years had been intermittent.  Id. at 1030.  He worked when work was available, but had been laid off frequently.  Id.  The ALJ awarded an average weekly wage based solely on the claimant's earnings in the last full year the claimant worked, which was four years before his injury.  Id. at 1030-31.  This court reversed, stating "[c]ontrary to the ALJ's decision, the record is devoid of evidence that [claimant] at the time of his injury, unlike in the immediately preceding three years, would have had the opportunity to be employed year-round."  Id. at 1031.

As in New Thoughts, the record in this case contains no evidence that Cardenas would have the opportunity to work year-round.  Cardenas testified that he had worked for M&M on "many" different occasions before his injury,

---

[1] In denying Petitioners' motion for reconsideration, the ALJ likewise stated that it would have reached the same result on rehearing by performing this alternative calculation.

and that he was often laid off once a specific job was completed. Cardenas collected unemployment compensation in 2002, 2003, and 2004.[2] Moreover, an average weekly wage of over $54,000 far exceeds Cardenas's actual earnings in previous years.[3] There is also no evidence that Cardenas enjoyed consistent employment in the years before he began working as welder for M&M, or that his employment situation had changed such that his future employment would have been more constant than in past years.

This lack of evidence distinguishes Cardenas's case from those relied upon by the ALJ and BRB. This court and the BRB have held that an ALJ may increase a claimant's average annual earnings to account for periods where the claimant did not work due to circumstances such as previous injury, a labor strike, a death in the family, or incarceration. See Gallagher, 219 F.3d at 434 (previous injury); Staftex, 237 F.3d at 408 (previous injury); Browder v. Dillingham Ship Repair, 24 BRBS 216 (1991) (death of family member); Daugherty v. Los Angeles Container Terminal, 8 BRBS 363 (1978) (incarceration); Le Batard v. Ingalls Shipbuilding Division, Litton Systems, Inc., 10 BRBS 317, 324 (1979) (labor strike). In these cases, year-round employment was available to the claimants, but the claimants were unable to take the opportunity due to a non-recurrent event. In contrast, employment that is itself intermittent is likely to remain so, absent some evidence of changed circumstances.

Cardenas also cites this court's decision in Gatlin to support the proposition that an ALJ may increase an intermittent worker's average weekly

---

[2] Petitioners repeatedly assert that Cardenas would return to Mexico to visit family while collecting unemployment benefits. However, substantial evidence supports that Cardenas was willing to work year round; the issue is whether he would have the opportunity to do so.

[3] In the 52 weeks before his injury in April 2004, Cardenas earned $34,276.98. Cardenas earned $40,062.50 in 2003 and $42,362.00 in 2002.

wage to reflect the amount the worker could have made had work been available year-round. 936 F.2d at 822. In Gatlin, the ALJ based an intermittent longshore worker's average annual earnings, in part, on the wage the worker earned in a previous job as a salesman. Id. However, evidence of the claimant's consistent employment as a salesman two years before his injury provided some basis for the ALJ in Gatlin to conclude that the claimant would have a similar opportunity for continuous employment in the future. Here, the record contains no evidence that Cardenas had been consistently employed in any field during any previous year. Nor is there any evidence Cardenas's employment situation had changed such that his future employment would have been more consistent than in past years. Compare Miranda v. Excavation Constr., Inc., 13 BRBS 882 (1981) (claimant started new, more lucrative work seven weeks before his injury).

Finally, Cardenas notes that income from unemployment is not included in a claimant's average weekly wage. Strand v. Hansen Seaway Serv., Ltd., 614 F.2d 572, 576 (7th Cir. 1980); Blakney v. Del. Operating Co., 25 BRBS 273 (1992). He argues that "it is simply unjust" to exclude the income from unemployment while including the time spent on unemployment in the divisor because doing so would artificially reduce the claimant's average weekly wage. As explained, infra, however, the propriety of excluding time spent on unemployment from the divisor depends upon the circumstances of the case. If there is no evidence that the claimant had the opportunity to work continuously at the time of the injury, it is unfair to the employer "to treat the claimant as a full-time worker and thereby exaggerate his loss." See New Thoughts, 118 F.3d at 1031 n.3; see also Strand, 614 F.2d at 576-77 (excluding unemployment benefits from average annual earnings and approving a divisor of 52).

Because no substantial evidence supports an assumption that Cardenas would have had the opportunity to work continuously in future years, we cannot

say that the ALJ's decision to use 33 weeks as a divisor was harmless. Accordingly, we REVERSE and REMAND to the ALJ for a redetermination of Cardenas's average weekly wage.